UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

SANDRA P. TOBIN,            )    Civil Action No.: 1:06-cv-0492-RBH-TER
                           )
           Plaintiff,    )
                           )
    -vs-                )
                           )    **REPORT AND RECOMMENDATION**
                           )
UNITED STATES DEPARTMENT OF   )
ENERGY and WACKENHUT SERVICES, )
INC.,                     )
                           )
           Defendants.   )
_____)

## I.    INTRODUCTION

In this action, Plaintiff asserts claims of discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964.  Presently before the Court is Defendant United States Department of Energy's (DOE) Motion for Summary Judgment (Document # 162).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  Because this motion is dispositive, this Report and Recommendation is entered for review by the district judge.

## II.    FACTUAL HISTORY

At all times relevant to this action, Plaintiff worked for the DOE at its Savannah River Site (SRS) in Aiken, Barnwell, and Allendale counties in South Carolina.  Bartholomew Dec. ¶ 9.  The SRS is owned by the DOE Savannah River Operations Office (DOE-SR).  Id. at ¶ 3.

Plaintiff began working for the DOE-SR as a GS-01 Clerk on November 30, 1998, in the Office of the Assistant Manager for Health, Safety and Technical Support (AMHSTS).  SF 50, Notification of Personnel Action (Ex. 2 to DOE's Motion for Summary Judgment).  At the time she

began working at the DOE-SR, she had a Georgia driver's license. Form I-9, Employment Eligibility Verification (Ex. 4 to DOE's Motion for Summary Judgment). Plaintiff was promoted to a GS-4, the full performance level for her position on March 2001. SF 50, Notification of Personnel Action (Ex. 6 to DOE's Motion for Summary Judgment).

The DOE-SR underwent realignment on June 29, 2003. Plaintiff was transferred to the Office of Site Services (OSS) under the supervision of Larry Snyder. Snyder Dep. at 47-49. Plaintiff's duties changed when she transferred to OSS. She was responsible for support services functions, including conference room scheduling, motor pool dispatch, and supply room support. A valid state driver's license was a requirement of this position. Id. at 48-54. In June of 2003, and throughout that summer, about 350 employees moved their offices from A-Area to B-Area at the SRS. Id. at 91-92. Mr. Snyder had responsibility for this move. He and his employees were helping out by collecting moving boxes and staging them at the loading dock. They also removed any items left behind in offices and put them in trash bags. Id. at 121-23.

Plaintiff told Mr. Snyder she needed a hard-walled office as an accommodation for a disability. Tobin February 7, 2008 Dep. (Tobin II Dep.) at 139; Snyder Dep. at 69. Mr. Snyder assigned her to the reproduction room in a hard-walled office. Snyder Dep. at 70. Plaintiff was absent from work for a period of time between August 2003 and January 2004. Snyder Dep. at 90. When Plaintiff returned to work in January of 2004, she worked in a cubicle because the hard-walled office was no longer available. Snyder Dep. at 94-95.

Plaintiff contacted the DOE-SR Equal Employment Opportunity (EEO) office on July 15, 2003. She complained that she was subjected to a hostile work environment and that she was not afforded a reasonable accommodation for a disability. Notice of Final Interview, August 28, 2003 (Ex. 9 to DOE's Motion for Summary Judgment). Plaintiff received her Notice of Final Interview in

-2-

August 28, 2003.  Id.  Plaintiff filed a formal Complaint of Discrimination on September 17, 2003, alleging that she was discriminated against on the bases of race (African-American), color (black), and disability (Dyslexia).  Formal Complaint of Discrimination, September 17, 2003 (Ex. 10 to DOE's Motion for Summary Judgment).  She also asserted retaliation and requested compensatory damages.  Id.  On January 29, 2004, the DOE notified Plaintiff that the investigation of her Complaint of Discrimination had been completed and informed her of her right to a hearing.  Notice of Right to Request a Hearing (Ex. 11 to DOE's Motion for Summary Judgment).  On March 5, 2004, Plaintiff requested a Final Agency Decision based on the record.  Processing Election Form (Ex. 12 to DOE's Motion for Summary Judgment).  The DOE issued a Final Agency Decision on May 18, 2004, finding that Plaintiff failed to establish that she had been discriminated against on the grounds raised in her complaint.  Final Agency Decision (Ex. 13 to DOE's Motion for Summary Judgment).  Specifically, the Final Agency Decision found that Plaintiff was not a qualified individual with a disability within the meaning of the Rehabilitation Act and that she had not made a prima facie case of disability discrimination.  Id.  The Final Agency Decision notified Plaintiff that she could file an appeal with the EEOC within thirty days or that she could appeal to this court within ninety days.  Id.  Plaintiff did not file an appeal with the EEOC within thirty days or with this court within ninety days.  In her deposition, Plaintiff stated that she has dropped the complaint.  Plaintiff Dep. at 144.

Plaintiff also contacted an EEO counselor on January 5, 2004, alleging that she had been discriminated against because of her disability and as reprisal, or retaliation, for her previous EEO complaint.  See Notice of Final Interview, dated January 29, 2004 (Ex. 14 to DOE's Motion for Summary Judgment).  She claimed that she was not allowed to go to her personal physician or "site medical" when she was ill, the work she was assigned was not in her job description and management failed to provide a reasonable accommodation for her disability.  Id.  Plaintiff was notified on January

29, 2004, of her right to file a formal complaint within fifteen days of her receipt of the notice.  Id. Plaintiff did not file a formal complaint on the issues she raised in her January 5, 2004, contact with the EEO counselor.  Stallings Dec. at ¶ 10.

Plaintiff obtained a South Carolina driver's license on January 24, 2002, and she surrendered her Georgia driver's license the same day.  Certified South Carolina Driving Record of Sandra P. Tobin (Ex. 15 to DOE's Motion for Summary Judgment).  Plaintiff's South Carolina Driving Record reveals that Plaintiff's license has been suspended on numerous occasions.  Id.  Relevant to this case is her suspension that began on March 24, 2004, for failure to pay a traffic ticket, and ended on November 22, 2004.  Id.  The driving record attached to the DOE's Motion for Summary Judgment, which was printed on February 21, 2006, reveals that Plaintiff's South Carolina driver's license is currently suspended until February 22, 2011.  Id.

Plaintiff applied for a Georgia driver's license on October 8, 2004, which required her to sign an affidavit stating that her driver's license was not suspended in any state.  Affidavit for Driver's License (Ex. 16 to DOE's Motion for Summary Judgment).

DOE-SR contracts with Wackenhut to provide law enforcement and security services at the SRS.  Underwood Dep. at 19, 24.  Wackenhut police officers have statutory authority  in the same manner as deputy sheriffs in towns and counties.  Id. at 21.  See also S.C. Code Ann. § 23-7-10.  In 2004, Mack Underwood served as Chief of Law Enforcement for Wackenhut.  Id. at 18.  Only a warranted DOE Contracting Officer has the legal authority to direct a government contractor like Wackenhut.  Armstrong Dec. ¶ 4.  The Contracting Officer's Technical Representative (COTR) is authorized to give technical direction to Wackenhut.  Id. at ¶ 5.  Ron Bartholomew, the Director of the Office of Safeguards, Security and Emergency Services (OSSES) is the COTR for the Wackenhut

contract and the only federal employee at SRS other than the Contracting Officers who can give direction to Wackenhut.  Id.

Plaintiff's supervisor, Larry Snyder, testified that someone left a copy of the June 12, 2004, Aiken Standard newspaper on his desk showing the Police Bookings for the previous week and Plaintiff's name was starred.  Snyder Dep. at 145-46.  See also Police Bookings, Aiken Standard, June 12, 2004 (Ex. 19 to DOE's Motion for Summary Judgment).  The article indicated that Plaintiff had been arrested for Driving Under Suspension and for Speeding.  Id.  Snyder went to the security office to find out how to confirm the information, and he was directed to Mack Underwood.  Snyder Dep. at 146.

When Underwood was made aware of the potential that Plaintiff was driving with a suspended license[1], he began investigating the accuracy of the information.  Underwood explained that "I cannot do any enforcement activity until I either corroborate the information if the individual wants to remain anonymous or I have that individual come forward and we go to the magistrate or we sit down and use that information to further the investigation."  Underwood Dep. at 43.  Once Underwood located Plaintiff in a database, he requested that Ron Bartholomew, his DOE Program Manager's Supervisor, provide him with Plaintiff's date of birth.  Id. at 44.  Underwood then had his terminal operator access the South Carolina Department of Motor Vehicles' (SCDMV) records and thereby determined that Plaintiff's privileges to drive a car had been suspended.  Id. at 53.  Underwood advised all officers to be on the lookout for a Chrysler Sebring and it's operator, Plaintiff, due to the fact that Plaintiff had no valid South Carolina driver's license.  Id. at 57.

_____

[1]Underwood testifies that he first became aware of the information through a complaint he received from a DOE employee that Plaintiff was driving government vehicles on site without a valid driver's license.  Underwood Dep. at 38-42.  The name of this female DOE employee is under seal.  See Order, dated May 5, 2008 (Document # 149).

On June 23, 2004, Snyder met with Plaintiff and told her not to drive a government vehicle until she provided documentation that she had a valid state driver's license.  Use of Government Vehicles Memorandum (Ex. 20 to DOE's Motion for Summary Judgment).  Snyder also told Plaintiff that operation of her personal vehicle on the SRS would subject her to enforcement by Wackenhut of South Carolina state laws governing the operation of motor vehicles.  Id.  Underwood informed Bartholomew that Wackenhut officials would be looking for Plaintiff driving and would take enforcement action against her.  Underwood Dep. at 56-57.  A Wackenhut officer did stop Plaintiff's vehicle that day.  Another black female was driving.  Id.  Snyder had no further discussions with Underwood or any other Wackenhut officials about Plaintiff after June 23, 2004.  Snyder testified that he never asked or directed any Wackenhut official to arrest Plaintiff.  Snyder Dep. at 180.

Plaintiff transferred out of Snyder's organization on August 7, 2004.  SF-52, Request for Personnel Action (Ex. 21 to DOE's Motion for Summary Judgment).  She transferred from the OSS to the Office of the Assistant Manager for Waste Disposition Project (AMWDP).  Id.  She was assigned to clerical and receptionist support functions for the AMWDP.  Id. Charles Hansen, the AMWDP, was her supervisor.  Id.  Hansen was directed to take Plaintiff into his organization.  Hansen Dep. at 34-37.  He did not want to take her because he did not have enough work for her to do.  Id. Plaintiff's transfer was delayed for four to eight weeks because Hansen wanted to make sure that all the issues concerning Plaintiff were resolved before her transfer.  Id.  Hansen talked to Snyder, who told him that Plaintiff's license was under suspension.  Id. at 38.  Snyder also told Hansen that he had difficulty supervising Plaintiff and that he didn't consider her trustworthy.  Id.

Snyder gave Plaintiff her yearly performance evaluation on August 9, 2004, and rated her as meeting or exceeding all expectations.  Snyder Dep. at 175.

On October 21, 2004, Plaintiff was stopped on the SRS by a Wackenhut officer. Underwood Dep. at 63. On October 25, 2004, Plaintiff was arrested by Wackenhut officials for DUS More than First, arising out of the traffic stop on October 21, 2004. Arrest Warrant (Ex. 22 to DOE's Motion for Summary Judgment).

Plaintiff contacted the EEO office for counseling on November 1, 2004. Tobin Email, dated November 1, 2004 (Ex. 24 to DOE's Motion for Summary Judgment). Plaintiff asserted that she wished to exercise her right to file an EEO Complaint of retaliation based on "race, age, disability, and gender." Id. Plaintiff first met with an EEO counselor on November 3, 2004. EEO Counselor's Report (Ex. 25 to DOE's Motion for Summary Judgment). Plaintiff filed a formal Complaint of Discrimination on December 13, 2004. Complaint of Discrimination (Ex. 26 to DOE's Motion for Summary Judgment). In her complaint, Plaintiff asserts that she was discriminated against on the basis of race, color, disability, gender, and reprisal. Id. She states, "I have been harassed by management officials and arrested in the work place as a result of discrimination and specifically reprisal." Id. Plaintiff's complaint was dismissed on May 18, 2005. Notice of Dismissal (Ex. 27 to DOE's Motion for Summary Judgment). Her allegations about Snyder's counseling on June 23, 2004, and her performance appraisal were dismissed as untimely. Id. The remaining allegations concerning her arrest were dismissed for failure to state a claim under Title VII. Id. Plaintiff was notified of her right to file an appeal with the EEO within thirty days or to file an action with the United States District Court within ninety days. Id.

Plaintiff filed this action in the District Court for the Southern District of Georgia on August 22, 2005. The case was transferred to this court on February 15, 2006.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of

evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Complaint of Discrimination filed September 17, 2003

In her formal Complaint of Discrimination filed with the EEO on September 17, 2003, Plaintiff alleged that she was discriminated against on the basis of race (African American), color (black), sex (female), and disability (dyslexia). She also raised a claim of retaliation. Specifically, she asserted that her supervisor created a hostile work environment, that he did not assign to coworkers the same kind of work he assigned to her, he assigned her janitorial duties instead of clerical duties, and he denied her a reasonable accommodation for her disability. Final Agency Decision (Ex. 13 to DOE's Motion for Summary Judgment). Plaintiff received notice of the Final Agency Decision on May 18, 2004. Id.

After a plaintiff receives notice of a final administrative decision, i.e., he exhausts his administrative remedies,

> Within 90 days of receipt of notice of final agency action taken by the department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal

from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in Section 2000-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 USC §2000e-16(c).  Therefore, a plaintiff must file suit within 90 days of receiving the Final Agency Decision.

Plaintiff filed this action on August 22, 2005, well over ninety days after receiving the Final Agency Decision.   Therefore, the issues raised in her September 17, 2003, Complaint of Discrimination are not properly before this court.

### B.     Contact with EEO Counselor on January 5, 2004

Plaintiff contacted an EEO counselor again on January 5, 2004, alleging that she had been discriminated against because of her disability and as reprisal, or retaliation, for her previous EEO complaint.  She claimed that she was not allowed to go to her personal physician or "site medical" when she was ill, the work she was assigned was not in her job description and management failed to provide a reasonable accommodation for her disability.  Plaintiff was notified on January 29, 2004, of her right to file a formal complaint within fifteen days of her receipt of the notice.  Plaintiff did not file a formal complaint on the issues she raised in her January 5, 2004, contact with the EEO counselor.

Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC.  See Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000).  "[A] federal employee complaining of job discrimination by the government must comply with the administrative exhaustion requirements and time limitations of 42 U.S.C. 2000e-16 before seeking relief in federal court . . . ."  Marimont v. Matthews, 422 F.Supp. 32, 33 (D.C.D.C. 1976) (citing Brown v. GSA, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)).  Plaintiff never

-10-

filed a formal complaint regarding the issues she raised with the EEO counselor on January 5, 2004.

Therefore, this Court lacks jurisdiction over Plaintiff's claims that she was not allowed to go to her

personal physician or "site medical" when she was ill, the work she was assigned was not in her job

description and management failed to provide a reasonable accommodation for her disability.

### C.     Formal Complaint of Discrimination Filed December 13, 2004

Plaintiff next made contact with the EEO office on November 1, 2004, when she contacted

an EEO counselor and stated that she wished to exercise her right to file an EEO Complaint of

retaliation based on race, age, disability, and gender.  She filed a formal Complaint of Discrimination

on December 13, 2004, in which she states, "I have been harassed by management officials and

arrested in the work place as a result of discrimination and specifically reprisal."  Plaintiff received

the Notice of Dismissal on May 18, 2005.  The Notice of Dismissal sets forth the facts upon which

Plaintiff basis her complaint:

> In her complaint, Ms. Tobin alleged that she was discriminated against based on the
> above referenced bases when: (1) by memo dated June 23, 2004, she was, in essence,
> deprived of performing her job duties when she was prevented from operating a
> government vehicle until she could obtain proof of a valid driver's license and
> informed that the operation of her personal vehicle onsite would be monitored by
> [Wackenhut]; (2) she believed her supervisor would give her a poor performance
> evaluation; (3) she was deprived of performing her work duties without being subject
> to false arrest; (4) as a consequence of this arrest, she was physically injured; (5)
> management acted to monitor and stop her from driving her vehicle in the workplace;
> and (6) management took steps to initiate discipline against her on or about October
> 20, 2004.

Notice of Dismissal (Ex. 27 to DOE's Motion for Summary Judgment).

The EEO determined that allegations one and two must be dismissed as untimely because

Plaintiff failed to seek EEO counseling within 45 days pursuant to 29 C.F.R. § 1614.107(a)(2), that

allegations three and six must be dismissed because they involve proposals to take personnel action,

and that allegations four and five must be dismissed because they fail to state a claim upon which relief can be granted.

### a.     Timeliness of Claims

In the present motion, DOE argues that several of Plaintiff's allegations arising out of the December 13, 2004, Complaint are untimely.  As stated above, a federal employee must exhaust his administrative remedies prior to filing suit for unlawful discrimination in employment.  A federal employee who believes he has been subjected to discriminatory treatment on the basis of race, color, religion, sex, national origin, age or handicap must consult a counselor "within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a).  Plaintiff first contacted an EEO counselor on November 1, 2004.  Thus, the 45 day rule bars all claims arising prior to 45 days before November 1, 2004, or, all claims arising prior to September 17, 2004.

Plaintiff complains of the June 2004 conversation with Snyder that she would not be allowed to drive a government vehicle until she could present proof of a valid driver's license.  This event clearly occurred prior to September 17, 2004, and is thus barred.[2]  Plaintiff further argues that the harassment based upon her disability status began in July of 2003 and continued based upon Snyder's failure to provide her with a reasonable accommodation of a closed wall office.  However, Plaintiff transferred from Snyder's supervision on August 7, 2004.  Thus, even assuming Snyder's

---

[2]Arguably, Plaintiff could present this as an ongoing violation.  Even so, this claim is without merit because Plaintiff has not presented evidence of similarly situated employees outside her protected class that were treated differently.  Additionally, Defendant had a legitimate, nondiscriminatory reason for this action.

failure to provide her with a walled office was a continuing violation, the violation ended with his supervision and therefore, any complaint based on this violation is untimely.[3]

Plaintiff also argues that Snyder scrutinized her whereabouts while not scrutinizing the whereabouts of her Caucasian counterparts or of her counterparts who did not file a complaint of discrimination. She lists as her counterparts Janice Adams, Ann Waring, Donnell Jenkins, and Debbie Hadden. The only evidence Plaintiff offers to support her allegation that Snyder was scrutinizing her whereabouts is the statement of Angelia Adams, who states that she noticed Snyder looking over the parking lot one late afternoon in the summer of 2004. See Exhibit C to Plaintiff's Response. She further states that she was not sure of the exact day of the occurrence, but the following day, she was told by the secretary for her division that she had been stopped by site police the day before when she was trying to take Plaintiff's car offsite. Id. The record shows that this stop occurred on June 23, 2004. Plaintiff's evidence that Snyder was scrutinizing her whereabouts is weak. Nevertheless, the one occurrence she offers in support of this allegation happened prior to September 17, 2004. Thus, this complaint is untimely.[4]

Plaintiff also complains that Snyder communicated to the Agency Personnel Department in January of 2005 that Plaintiff refused to cooperate with her closeout performance evaluation and a

---

[3]The DOE argues that Plaintiff complains that Snyder took steps to prevent her transfer out of his organization, and that he gave her a poor performance evaluation. Her transfer was effective August 7, 2004, and Plaintiff received her performance evaluation on August 9, 2004. These events occurred prior to September 17, 2004. However, Plaintiff notes in her Response to DOE's motion that she did not file her complaint of discrimination based on these facts.

[4]Again, Plaintiff could argue that this alleged violation was ongoing, but, even if timely, the claim is without merit because Snyder's actions did not affect the terms or conditions of her employment, plaintiff has failed to point to similarly situated employees outside her protected class that were treated differently, and Snyder had a legitimate, nondiscriminatory reason for his actions.

notation was made on her performance evaluation when she, in fact, had not refused to cooperate.[5]

Plaintiff complains that Snyder also retaliated against her for filing a complaint by telling her new

supervisor, Charles Hansen, that she was quick to file EEO complaints and that she was a

troublemaker who could not be trusted.  She asserts that Hansen told her this information in October

of 2004.  She also claims that Snyder conspired with Mack Underwood to have her vehicle stopped

on October 21, 2004, and to have her arrested and subjected to excessive force on October 24, 2004,

and that this conspiracy was based on Snyder's discriminatory and retaliatory motives.  These claims

appear to be timely.  Thus, the court must next determine whether the DOE's motives for its actions

were discriminatory or retaliatory.

### b.    Discrimination

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court set forth a

burden-shifting scheme for proving cases of intentional discrimination under Title VII.[6]  Under

McDonnell Douglas, Plaintiff has the initial burden of establishing a prima facie case of

discrimination, by showing (1) she is a member of a protected class; (2) she was qualified for her job

---

[5]This obviously occurred after Plaintiff filed her formal complaint of discrimination on December 11, 2004.  However, "a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission.'"  See Hill v. Western Elec. Co., Inc., 672 F.2d 381, 390 n.6 (4th Cir. 1982) (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970); EEOC v. General Electric Co., 532 F.2d 359, 373 (4th Cir. 1976).  See also Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992) (holding that a plaintiff need not file a separate EEO complaint for retaliation that occurs during the pendency of the case before the EEOC).

[6]The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), and Reeves v. Sanderson Plumbing Products, Inc., – U.S. –, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

and her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002). The fourth element can be established by presenting evidence raising an inference of discrimination. See EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n.2 (4th Cir. 2001)(citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)).

Plaintiff meets the first two requirements of a prima facie case of discrimination. She is a black female and is, thus, a member a of a protected class. Furthermore, there is no evidence in the record that her job performance was not satisfactory. However, it is not so clear that Plaintiff suffered any adverse employment action.

An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-76 (4th Cir.2004). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

Plaintiff has failed to produce sufficient evidence to establish that Snyder's communication with the Agency Personnel Department regarding her failure to accept receipt of her evaluation affected the terms, benefits, or conditions of her employment. See Lewis v. Forest Pharmaceuticals, Inc., 217 F.Supp.2d 638, 648 (D.Md.2002) ("Reprimands, whether oral or written, do not per se significantly affect the terms or conditions of employment.") (citing Nye v. Roberts, 159 F.Supp.2d 207, 213 (D.Md.2001)); Naughton v. Sears, Roebuck & Co., No. 02-4761, 2003 WL 360085 at *5

-15-

n. 1 (N.D.Ill.2003) (criticism, including a negative performance review or development plan, does not constitute an adverse employment action). Plaintiff states generally that because of the notation of her failure to acknowledge receipt of the evaluation, she could not obtain favorable consideration for other jobs in the federal government for which she applied. See Plaintiff's Affidavit at ¶ 51 (attached as Ex. B to Plaintiff's Response). However, she presents no evidence to support this generalization.

Furthermore, she presents no evidence that the statements Snyder made to Hansen about her being sneaky and quick to file EEO complaints affected the terms, conditions or benefits of her employment. She states in her response that Snyder attempted to have Hansen treat her differently from his other employees. However, there is no evidence in the record that Hansen treated her any differently than he did his other employees. All of Plaintiff's complaints of discrimination and retaliation arise from Snyder's alleged conduct, not Hansen's. Therefore, to the extent she asserts Snyder was trying to convince Hansen to treat Plaintiff differently, she fails to show adverse employment action as a result of Snyder's comments to Hansen.

Finally, the alleged conspiracy between Snyder, Bartholomew and Underwood to stop Plaintiff and have her arrested does not constitute an adverse employment action. There is conflicting evidence of whether a DOE official directed or requested that Plaintiff be stopped. Plaintiff asserts in her deposition and affidavit that the officer who stopped her told her that a DOE official instructed his supervisor to stop her. Plaintiff Dep. at 54-55; Plaintiff Aff. at ¶ 17. The officer who stopped her, Quattlebaum, submits a declaration stating that he never told Plaintiff that a DOE official told him to stop her. Quattlebaum Declaration at ¶ 13. Attached to Quattlebaum's Declaration is a transcript of the video of the stop and the video has been provided to the court.

-16-

Although the audible portions of the videotape do not reveal that Quattlebaum mentioned a DOE official, there are inaudible portions of the videotape as well. Thus, a question of fact exists as to whether a DOE official directed or requested the stop of Plaintiff. Nevertheless, there is no evidence that Plaintiff's stop and subsequent arrest affected a term, benefit, or condition of Plaintiff's employment. Plaintiff's employment was not changed in any way following her stop and subsequent arrest.

Even if Plaintiff had suffered an adverse employment action, she has failed to meet the fourth requirement of a prima facie case of discrimination as she has not presented evidence that other employees outside her protected class were treated differently. Plaintiff states in her affidavit that Snyder did not request that Janice Adams, Ann Waring, or Donnell Jenkins be stopped or arrested. Plaintiff's Affidavit at ¶ 50. She also states that Snyder did not cause negative comments to be placed on the performance evaluations of Janice Adams, Clara Dotts, or Ollie Carter. Id. at ¶50a. Four of the five individuals named by Plaintiff are in one or more of the same protected classes as Plaintiff. Janice Adams, Ann Waring, and Ollie Carter are African-American females, and Donnell Jenkins is an African-American male. See id. Thus, these individuals are not outside her protected class. It is not clear from the record whether the fifth individual, Clara Dotts, falls within a protected class.

Nevertheless, Plaintiff must establish that "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F2d 577, 583 (6th Cir. 1992)(citing Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531

-17-

(S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir.1987); <u>Lanear v. Safeway Grocery</u>, 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); <u>Cox v. Electronic Data Systems Corp.</u>, 751 F.Supp. 680 (E.D.Mich.1990)); <u>Radue v. Kimberly-Clark Corp.</u>, 219 F3d 612,617-18 (7th Cir. 2000)(holding that plaintiff must demonstrate that the same supervisor was involved in comparable situations to demonstrate disparate treatment of similarly situated employees); <u>Stanback v. Best Diversified Products, Inc.</u>, 180 F.3d 903,910 (8th Cir. 1999)(same); <u>Shumway v. United Parcel Serv., Inc.</u>, 188 F.3d 60,64(2d Cir. 1997)(employees were not similarly situated because they were not supervised by the same person).  There is no evidence in the record that these individuals were similarly situated with Plaintiff.[7]  Thus, Plaintiff has failed to present evidence sufficient to show that she was treated differently from similarly situated individuals outside her protected class.

In sum, Plaintiff fails to establish a <u>prima facie</u> case of discrimination because, although she is a member of a protected class and her job performance was satisfactory, she presents insufficient evidence that she suffered an adverse employment action or that other employees outside her protected class were treated differently.  However, even if Plaintiff had established a <u>prima facie</u> case of discrimination, her claim still fails.  Once Plaintiff has established a <u>prima facie</u> case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action.  <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 ((1981).  This is merely

---

[7]Plaintiff also makes the argument that <u>all</u> other employees of the DOE who were to be arrested, except for her and an irrate Caucasian male, were allowed to self-surrender rather than be handcuffed and arrested in the workplace.  This argument fails to support her complaint of discrimination because it indicates that employees both in and outside her protected class were treated differently, which raises no inference of discrimination based on race, sex, or disability.

a burden of production, not of persuasion.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). The DOE has presented legitimate, nondiscriminatory reasons for its actions. First, Snyder's legitimate, nondiscriminatory reason for communicating with the Agency Personnel Department that Plaintiff received receipt of her evaluation is simply that it happened, that is, that Plaintiff failed to acknowledge receipt for a period of time.  Although there is a question of fact as to whether Plaintiff failed to acknowledge receipt of her evaluation, Defendant has only the burden of production, not persuasion.  The DOE also presents a legitimate, nondiscriminatory reason for Snyder's comments to Hansen about Plaintiff.  Prior to Plaintiff's transfer to Hansen's supervision, Hansen wanted to know whether there were any "problems" or "old issues" regarding Plaintiff because he did not have time to work on "old issues."  Hansen Dep. at 36-37.  Hansen talked to Snyder about this and Snyder told him he had difficulty supervising Plaintiff and that he did not find her trustworthy because of her driving without  a license.  Id. at 37-39.  Snyder testified that "somewhere along the line" Plaintiff's EEO complaints came up in a conversation with Hansen.  Snyder Dep. at 171.  Thus, Snyder made these comments to Hansen in response to his concerns raised over any problems or old issues regarding Plaintiff, which is a legitimate nondiscriminatory reason.  Finally, the DOE presents a legitimate, nondiscriminatory reason for Snyder's communication with Underwood regarding Plaintiff's suspended driver's license.  Snyder received information that Plaintiff had been arrested for DUS and he was concerned because part of her job responsibilities required her to drive government vehicles from time to time.  Therefore, Snyder contacted Underwood to confirm the information.  Snyder had no further contact with Underwood regarding Plaintiff after June 23, 2004. Snyder Dep. at 163-64.

-19-

Once the defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)).  In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reasons produced by Defendant are not its true reasons, but were pretext for discrimination.  Reeves, 530 U.S. at 143.  During all of the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff.

Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her based race, gender, or disability.  It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's" adverse employment action.[8]  Hawkins v. Pepsico, 203 F.3d 274, 279 (4thCir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th

---

[8] "Proof that the employer's proffered reasons in unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47.  "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004).  Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"). It is the perception of the employer that is critical. Hawkins, 203 F.3d at 280. Even a reasoned decision based on incorrect facts is not evidence of pretext. Pollard v. Rea Magnet Wire Co., 824 F.3d 557, 559 (7th Cir. 1987), cert. denied, 484 U.S. 977 (1987).

Plaintiff has failed to produce evidence that the DOE's reasons for its actions were merely pretext for discriminatory reasons. The actions taken by Snyder about which Plaintiff complains fall within the ambit of day-to-day business decisions outside the reach of Title VII. See Jiminez, 57 F.3d at 377. In fact, there is no evidence of any discriminatory intent on the part of her supervisor, Snyder, or any other DOE official. As mentioned above, Plaintiff has failed to even provide evidence of other employees outside her protected class that were treated differently. Because Plaintiff has not presented evidence of any discriminatory intent, her claims of discrimination must fail, and summary judgment is appropriate on those claims.

### c.    Retaliation

Section 2000e-3(a) of Title 42 of the United States Code provides, in relevant part,

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The McDonnell Douglas burden-shifting analysis applies to retaliation claims as well. Yashenko v. Harrah's N.C. Casino Co., LLC, 446 F.3d 541, 550-51 (4th Cir.2006). For Plaintiff to state a prima facie case for retaliation under the opposition clause, she must show (1) she engaged in a protected activity, (2) defendant took adverse employment action against her, and (3) a causal

connection existed between the protected activity and the adverse action. Matvia v. Bald Head Island Management, Inc., 259 F.3d 261, 271 (4th Cir. 2001).

To establish "protected activity" plaintiff must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir.1990); see also Ross, 759 F.2d at 355 n. 1 (stating that a Title VII oppositional retaliation claimant need not show that the underlying claim of discrimination was in fact meritorious in order to prevail). Plaintiff engaged in protected activity by filing an EEO complaint on September 17, 2003, and contacting an EEO counselor on January 5, 2004.

The Supreme Court has clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern & Santa Fe Rwy. v. White, 548 U.S. 53, 64.(2006). However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67 (emphasis added). Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotation marks and citations omitted).

Even under the less stringent standard set forth above, Snyder's notation on Plaintiff's evaluation and his comments to Hansen do not rise the level of adverse employment actionss. First, Snyder's mere notation on Plaintiff's performance evaluation that she refused to accept receipt of the evaluation would not deter a reasonable employee from engaging in protected activity. See, e.g.,

-22-

Parsons v. Wynne, 221 Fed. Appx. 197, 199, 2007 WL 731398, *1 (4th Cir.2007) (unpublished) (adverse performance evaluation and change in work schedule not materially adverse actions); Washington v. Norton, 2007 WL 1417290, *4 (N.D.W.Va.2007) ("Reprimanding an employee for unprofessional conduct or warning an employee about poor performance by letter ... would not dissuade a worker from filing protected complaints"); Gordon v. Gutierrez, 2007 WL 30324, *9 (E.D.Va.2007) ("circumstances of verbal counseling ... would not discourage a reasonable employee"); and Zackrie v. Lockheed Martin, Corp., 2006 WL 2849767, *8 (D.Md.2006) (documenting areas for improvement and tracking absences insufficient).

Second, there is no evidence in the record to indicate that Snyder intended for Plaintiff to become aware of the negative comments he made about her to Hansen.  Snyder made those comments in response to Hansen's inquiry about Plaintiff.  Absent any evidence that Snyder intended for his comments to get back to Plaintiff, his comments are not violative of the anti-retaliation provisions of Title VII because they were not meant to dissuade Plaintiff from filing a charge of discrimination.  Snyder's comments were made in response to Hansen's inquiry about Plaintiff and whether there were any problems or old issues he would have to deal with upon her transfer to his supervision.  Of course, the fact that Snyder did not intend the negative comments to dissuade Plaintiff from filing a complaint is not dispositive of whether they were adverse employment actions if those comments affected a term, condition or benefit of her employment.  However, as discussed above, there is no evidence in the record or even any allegation by Plaintiff that Hansen treated her any differently than he did his other employees.  Thus, Snyder's comments did not affect a term, condition, or benefit of Plaintiff's employment and were not adverse employment actions.

However, the alleged conspiracy between Snyder, Bartholomew and Underwood to stop Plaintiff and have her arrested could constitute a materially adverse action in the context of a retaliation claim. The Supreme Court in <u>White</u> broadened the scope of adverse employment actions in retaliation cases to include adverse actions outside the workplace. As noted above, there is some evidence, albeit slight, that a DOE official directed WSI officials to stop Plaintiff for driving with a suspended license. Thus, viewing the evidence in a light most favorable to Plaintiff, she suffered a materially adverse action when she was stopped on October 21, 2004.

Along with submitting evidence that Plaintiff engaged in protected activity and suffered an adverse employment action, Plaintiff must also produce evidence of a causal connection between the protected activity and the adverse action. Plaintiff has failed to present any evidence of a causal connection between her formal Charge of Discrimination filed in September of 2003, her contact with the EEOC counselor in January of 2004, and her stop and arrest in October of 2004.

A causal connection can be established based on temporal proximity alone, that is, where the employer takes adverse employment action against an employee shortly after learning of the protected activity. <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir.1989). However, the passage of time negates this inference. <u>See</u> <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509, (2001) (per curiam) (citing cases); <u>Dowe v. Total Action Against Poverty</u>, 145 F.3d 653, 657 (4th Cir.1998). In this case, Plaintiff fails to establish a causal connection based on proximity alone because the protected activity (her contact with the EEO counselor on January 5, 2004) occurred over eight months before the adverse action (when she ws stopped on October 21, 2004). <u>See</u>, <u>e.g.</u>, <u>Pascual v. Lowe's Home Centers, Inc.</u>, 193 Fed. Appx. 229, 232 (4th Cir.2006) (unpublished) (holding that three to four months between the termination and

-24-

protected activities is too long to establish a causal connection by temporal proximity alone); <u>Garrett v. Lujan</u>, 799 F.Supp. 198, 202 (D.D.C.1992) (concluding that the passage of nearly a year precluded an inference of causal connection); <u>Parrott v. Cheney</u>, 748 F.Supp. 312 (D.Md.1989) (even the passage of as little as five months between filing EEOC complaint and adverse action may be enough to negate causal connection in a particular factual context), <u>aff'd per curiam</u>, 914 F.2d 248 (4th Cir.1990).  Thus, because Plaintiff has failed to present any other evidence of a causal connection, Plaintiff fails to establish a <u>prima facie</u> case of retaliation.

However, even if Plaintiff had established a prima facie case of retaliation, as discussed in detail above, the DOE has proffered legitimate, non-retaliatory reasons for its actions, and Plaintiff has failed to show that these reasons are merely pretext for a retaliatory motive.  Therefore, Plaintiff's claims of retaliation fail.

## V.    CONCLUSION

In light of the above analysis, it is recommended that the DOE's Motion for Summary Judgment (Document # 162) be granted.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 26, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the attached page.**